LAW OFFICE OF

# JUSTIN A. ZELLER, P.C.

JUSTIN A. ZELLER
JAZELLER@ZELLERLEGAL.COM

JOHN M. GURRIERI
JMGURRIERI@ZELLERLEGAL.COM

TELEPHONE: 212.229.2249
FACSIMILE: 212.229.2246

January 25, 2021

**VIA ECF**

Hon. Valerie E. Caproni, United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse

Re: *Campos et al v. 835 Fox St Realty, LLC et al*, 20 CV 7149 (VEC)

Dear Judge Caproni:

The plaintiff, with defendants' consent, hereby moves for the Court's approval of the attached settlement agreement as fair to the plaintiff.

This case is against a former employer, 835 Fox St Realty, LLC; Oak Equities LLC; Oscar Kohn, and Josh Kowitz ("Defendants"). Plaintiff has alleged his former employer failed to pay him proper minimum wages and overtime pursuant to the Fair Labor Standards Act and New York Minimum Wage Act in addition to failing to provide him with proper wage statements pursuant to the Wage Theft Prevention Act. Defendants categorically reject the claims asserted in the complaint, and deny that Plaintiff is entitled to any relief whatsoever.

The parties have executed a settlement agreement. Plaintiff has agreed to release the Defendants of the claims made in the complaint in exchange for $27,500.00. Payment is due in two installments: the first payment to be made within 14 days of Court approval of the agreement, and the second payment to be made within 45 days of Court approval of the agreement. If the Defendants fail to make payment pursuant to the settlement agreement, Plaintiff, by letter motion to Your Honor, may immediately seek entry of a judgment against the Defendants for the full amount owed, less any amounts Defendants have already paid plus a penalty of whatever remains unpaid. The Plaintiff's attorneys' portion of the settlement agreement is $9,433.32, and the Plaintiff's portion is $18,066.68. The settlement agreement is enclosed.

This action arises under the Fair Labor Standards Act, the Minimum Wage Act, and the Wage Theft Prevention Act. Plaintiff alleges that Defendants violated the wage and hour laws and that the Defendants owe Plaintiff back wages and liquidated and statutory damages. In the complaint, Plaintiff alleged that he worked approximately 56 hours per week and that he worked as a janitor for Defendants at their residential apartment buildings in the Bronx since 2001. Plaintiff alleges he was paid on a weekly salary basis, and that Defendants failed to provide Plaintiff with weekly pay stubs pursuant to the Wage Theft Prevention Act. Plaintiff also seeks damages for unjust enrichment due to Defendants promising to pay his cell phone bill but never doing so. Plaintiff used this cell phone as part of his job duties.

Defendants maintain that Plaintiff's job duties required, *at most*, a few hours of work each day, for a total of about 10 hours per week. Given how small the buildings are (32 units total), Defendants maintain that under no circumstance would Plaintiff's job duties *ever* take more than 40 hours in a week to complete. According to Defendants, if Mr. Campos worked more than 12 hours in any given week, that would likely be an overestimate. Nevertheless, each week, Plaintiff was paid $216.00 for 12 hours of work. Plaintiff's hourly rate of pay is $18.00. In his complaint, Plaintiff claims that he worked 56 hours per week for Defendants. According to Defendants, these allegations are categorically and undeniably false. Moreover, each week Plaintiff signed a timesheet, wherein he acknowledged that he worked a total of 12 hours each week, and that if he worked any additional hours, he would initial the timesheet to indicate the increased hours worked.

This case settled at Court-ordered mediation. At the mediation, Defendants provided credible records showing that plaintiff was paid at an $18.00 hourly rate and worked only approximately 12 hours per week. Defendants also provided credible information about Plaintiff's job duties which substantiated the representation in the records that plaintiff worked approximately 12 hours per week. In addition, the parties discussed that Plaintiff worked certain on-call hours where he was unpaid. During these allegedly unpaid hours, Plaintiff was responding to calls from tenants to help make repairs or clean their apartments. On occasion, Plaintiff would appear at the buildings to help contractors make repairs such as fix the boiler. If the case were to proceed, Defendants would provide all documentation from contractors who helped fix the building which would show that many of the tasks needed in the buildings were done by independent contractors rather than the Plaintiff.

Plaintiff believes that given Defendants' records and their position, that he could justify that he worked 45 hours per week, which would mean he is owed $3,005.00 in overtime wages, $3,005.00 in liquidated damages for unpaid overtime, $2,783.41 for unjust enrichment, $2,783.41 for liquidated damages for unjust enrichment, and $5,000.00 for statutory damages for failure to provide an accurate wage statement, in sum: $16,576.81 plus attorney's fees and costs and prejudgment interest. By these calculations, the settlement is also fair to Plaintiff.

Defendants take the position that, in actuality, Plaintiff is owed no monies whatsoever, and has been paid all of the compensation that he was entitled under applicable law. Had the case moved forward, Defendants would have produced records of contractors who responded to problems, subpoena'd records from Plaintiff's cell phone bill, and garnered testimony from multiple tenant witnesses. To the extent that plaintiff performed any work in their residential apartment building that was unpaid, Defendants provided credible testimony at the mediation which shows that Plaintiff only worked approximately 12 hours per week doing minimal cleaning and was paid for each hour. Defendants point out that the burden shifts to Plaintiff to prove his claim once Defendants produce wage and hour records, which they have done. Defendants seek to settle this case primarily to obtain the certainty that a settlement provides, rather than engage in a lengthy litigation where they will undoubtedly incur significant costs and need to devote substantial resources.

In sum, a *bona fide* dispute exists with respect to wages owed, hours worked, whether Plaintiff could prove entitlement to liquidated damages, and whether Plaintiff was paid for all hours worked. Plaintiff's counsel and Defendants' counsel discussed these issues at length in a series of telephone calls and email exchanges and at the Court-Ordered mediation, and agreed that in light

of this *bona fide* dispute about the extent of damages, settlement would bring both sides certainty and a quick resolution, and so settlement would be in the best interests of both parties.

Employees cannot waive or settle claims under the Fair Labor Standards Act for unpaid minimum wages or overtime, except by settlements supervised by the Department of Labor or judicially-approved settlements of a civil action. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203-06 (2d Cir. 2015).

Plaintiff and Defendants represent to the Court that the settlement agreement is fair to Plaintiff, reasonably resolves *bona fide* disagreements between Plaintiff and Defendants about the merits of Plaintiff's claims; and demonstrates a good faith intention by Plaintiff and Defendants that their claims for liability and damages in this action be fully and finally resolved and not re-litigated in the future.

In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See id.* at 203 n.3. Here, the parties believe that the settlement agreement is fair and reasonable because: (1) the Plaintiff is collecting a substantial sum from a small employer; and (2) the settlement agreement satisfies all the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015).

The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.*

Plaintiff's potential recovery is outlined above. Given the risks of this case, including the Defendants' testimony contradicting Plaintiff's testimony, Defendants' records, and the uncertainty of collecting a large judgment, the settlement amount of $27,500.00 is justified.

The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'" *Id.* This agreement was reached before discovery was completed. Therefore, the settlement will cause the parties to avoid the expense and burdens of discovery and trial and the settlement will provide Plaintiff with a prompt payment, as opposed to an uncertain outcome perhaps years in the future if the case is litigated further and potentially appealed. Settling the Plaintiff's claims at this point will avoid continuing litigation costs for all parties. Had this action not settled, the parties would have moved forward with discovery, motions, trial preparation, trial, and possibly appeals.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the inherent risks and expenses imposed by proceeding to a potential trial and post-judgment collection proceedings. Plaintiff faces the additional risk of recovery. Defendants also have credible records which they will substantiate with testimony that show that Plaintiff worked far fewer hours than he is claiming. Thus, Plaintiff faces serious litigation risks in pursuing the case further.

The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" *Id.* This agreement was reached by arms-length negotiation by experienced employment attorneys, as both Plaintiff's counsel and Defense counsel routinely handle employment cases, including those brought under the FLSA. The Plaintiff is represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in

representing employees in wage and hour litigation. Plaintiff's counsel has represented plaintiffs in over 300 actions for such claims in the Southern District of New York alone, and many others in the Eastern District of New York and the District of New Jersey, and in the courts of the State of New York. Defendants' counsel in this case has successfully represented corporations and individual defendants in a multitude of wage and hours matters in federal and state court, including actions arising under the FLSA.

The fifth *Wolinsky* factor examines "possibility of fraud or collusion." *Id.* There is no evidence of any fraud or collusion in this case between the parties to circumvent the wage and hour laws. The agreement arose via settlement negotiations with opposing counsel. Indeed, this case was diligently litigated, and the settlement was reached through arms-length negotiation.

Lastly, the Court must consider evidence of any factors weighing against approval. There are none.

The settlement agreement also resolves the Plaintiff's attorney's fees and costs. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Minimum Wage Act, N.Y. Lab. Law § 650, *et seq.*, Section 191 of the New York Labor Law, and the Wage Theft Prevention Act, 2010 N.Y. Laws 564. These laws, in combination, provide to a prevailing party in a civil action an award of attorney's fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012). This award is mandatory. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

Plaintiff is represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in wage and hour litigation and incorporated in 2005. The sole shareholder of the law firm is Justin A. Zeller, an attorney who graduated law school in 2002 and has specialized in wage and hour law since 2005. Associated with the law firm is John M. Gurrieri who graduated law school in 2013, and was associated with the law firm from February 2014 until July 2017 and again since July 2019. Brandon D. Sherr, who graduated law school in 2010, was associated with this law firm until June 2019, and has specialized in wage and hour law and continues to.

The amount of attorney's fees to which a party is entitled may be based on the presumptively reasonable fee, sometimes called the lodestar. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008). The presumptively reasonable fee is the product of the reasonable hours in the case and the reasonable hourly rate. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables, *Arbor Hill*, 522 F.3d at 184, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client

> or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989); see also *Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). But the Court need not make separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

Reasonable hourly rates awarded in similar cases range from $200 to $600 per hour for similar small firms. *See Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 U.S. Dist. LEXIS 50323, at *23–24 (S.D.N.Y. Apr. 7, 2015) (finding rates for three attorneys from a small firm specializing in wage and hour litigation over five other cases to be from $200 to $425 and awarding between $225 and $400); *Guallpa v. NY Pro Signs Inc.*, No. 11 CV 3133, 2014 U.S. Dist. LEXIS 77033, at *28–30 (S.D.N.Y. May 27, 2014), *adopted by* 2014 U.S. Dist. LEXIS 116671 (S.D.N.Y. Aug. 18, 2014) (finding rates for three attorneys from one small firm over three other wage and hour cases to be from $350 to $600 and awarding within the same range in wage and hour case).

Mr. Sherr's reasonable hourly rate has been considered and he was found to be entitled to rates of $300 in 2020; $275 per hour in 2018, $300 and $275 per hour in 2017, and $225 and $300 per hour in 2015. *See Villalva Estrada v. Giovanni's Italian Eatery, Inc.,* 2020 U.S. Dist. LEXIS 151715, *11, 16 CV 6162, (S.D.N.Y. Aug. 20, 2020); *Alvarez v. Nu Bella Nail & Spa I, Inc.*, No. 16 CV 5721, slip op. (E.D.N.Y. June 14, 2018), *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16 CV 1907, 2017 U.S. Dist. LEXIS 185397, at *14 (E.D.N.Y. Nov. 7, 2017), *adopted by* 2017 U.S. Dist. LEXIS 205344 (E.D.N.Y. Dec. 12, 2017); *Duran v. Superior Cooling LLC*, No. 15 CV 7243, 2017 U.S. Dist. LEXIS 82249, at *20 (E.D.N.Y. May 10, 2017); *Patterson v. Copia NYC LLC*, No. 15 CV 2327, 2015 U.S. Dist. LEXIS 189029, at *18 (S.D.N.Y. Dec. 29, 2015);*Galicia v. 63-68 Diner Corp.*, 13 CV 3689, 2015 U.S. Dist. LEXIS 191532, at *6 (E.D.N.Y. Mar. 30, 2015).

Mr. Gurrieri's reasonable hourly rate has been considered and he was found to be entitled to a rate of $225 in 2020; $225 in 2018, $250 and $225 per hour in 2017; and $250 per hour in 2015. *See Giovanni's,* slip op. at *11; *Alvarez*, slip op.; *Gonzalez-Diaz*, 2017 U.S. Dist. LEXIS 185397, at *14; *Duran*, 2017 U.S. Dist. LEXIS 82249, at *20; *Patterson,* slip op. at 15–16.

The plaintiff would have requested that the Court find reasonable hourly rates of $300 for Mr. Gurrieri and Mr. Sherr. These rates are within the range previously found reasonable for this nature of action in this forum and account for increased experience by each of these litigators since the Courts mentioned above considered their hourly rates.

To determine the reasonableness of the hours, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the hours and the nature of the work done. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Puglisi v. Underhill Park Taxpayer Ass'n*, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).

Plaintiff includes herewith on behalf of the Law Office of Justin A. Zeller, P.C., the contemporaneous time records of the Plaintiff's counsel, which show 58.9 total hours spent in this case. The included description with each entry corresponds to the descriptions in the American Bar Association's Uniform Task-Based Management System, a broadly recognized system of documenting hours. Courts even recommend its use for motions for attorney's fees. *See Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1174 (N.D. Cal. 2004); *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1189 (N.D. Cal. 2004) ("Although the court considers plaintiff's data in the manner presented, the American Bar Association's "Litigation Code Set" provides a more uniform methodology for categorizing requested hours. *See* American Bar Association ("ABA"), Uniform Task-Based Management System Information, *available at* [http://www.americanbar.org/groups/litigation/resources/uniform_task_based_management_system.html]. The ABA template commends itself to parties applying for fee awards."). Similar productions by the plaintiff's counsel of such contemporaneous time records have been found by the Court to be "complete." *Palacios v. Z & G Distribs., Inc.*, No. 11 CV 2538, 2013 U.S. Dist. LEXIS 112676, at **18–19 (S.D.N.Y. Aug. 6, 2013).

The 13.3 total hours sought are reasonable, appropriately delegated among the involved attorneys requisite to their experience, and necessary to the litigation of this action. Thus, Plaintiff's attorneys' fees are $3,990.00.

Additionally, the plaintiff's costs total the $400.00 filing fee. This expense was prepaid by the Plaintiff's counsel. The Plaintiff includes an enumeration of these costs herewith.

Therefore, the total fees and costs sum to a total lodestar of $4,390.00

Although the lodestar ($4,390.00) is less than the total attorney's fees and costs awarded under the settlement agreement, the proposed allocation of $9,433.32 is reasonable. The total amount apportioned as attorney's fees is fair and reasonable because it is one-third of the total settlement plus costs. Courts in this Circuit regularly approve fees of one-third plus costs. *See, e.g.*, *Rojas et al. v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *4 (S.D.N.Y. Oct. 10, 2018) (finding attorneys' fees representing one-third of the settlement amount plus costs reasonable); *Marquez v. Roberto's Rest. Corp.*, No. 16 Civ. 2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. November 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Gutierrez v. Highridge Bagels, Inc.*, No. 17 Civ. 1451 (VLB), 2017 U.S. Dist. LEXIS 90984, at *2 (S.D.N.Y. June 12, 2017) ("[T]he Court finds the attorneys' fees, which are one-third of the recovered amount plus costs, to be fair and reasonable[.]"); *Redzepagic v. Hammer*, No. 14 Civ. 9808 (ER), 2017 WL 1951865, at *2 (S.D.N.Y. May 8, 2017) ("One-third contingency fees ... are commonly accepted in the Second Circuit in FLSA cases.").

In addition, the proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel. *See In re Lawrence*, 24 N.Y.3d 320, 339 (2014). Nothing additional is to be paid by the plaintiff to the plaintiff's counsel. The proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel.

Further, the lodestar multiplier in this case (2.15) is fair and well within the range found to be fair in this Circuit. *See Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, *24 (E.D.N.Y. 2018) (citing *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090, 2012 U.S. Dist. LEXIS 164265, 2012

WL 5830557, at *3 (E.D.N.Y. Nov. 16, 2012) ("Courts regularly award multipliers from two to six times the lodestar."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CV 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09 and noting that this "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (finding that "fees of $283,333 and a lodestar of $127,000, the resulting 'lodestar multiplier' of 2.2 is well within the range of acceptable"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country").

   For the foregoing reasons, the parties request the Court find the settlement agreement to fairly compromise Plaintiff's claim under the Fair Labor Standards Act and approve the settlement agreement as fair and reasonable and dismiss this action with prejudice against Defendants.

                Respectfully submitted,

                *John M. Gurrieri*

                John M. Gurrieri

Enclosures (3)